IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARPENTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> P. SANTOS CO., INC., <br><br> *Defendant.* | Case No.  2:19-cv-00699-JDW |

## MEMORANDUM

The cross-motions for summary judgment before the Court focus primarily on the application of the statute of limitations. If it accrued when P. Santos Co. first stopped making contributions that it owed to various union funds under a collective bargaining agreement, then it bars Plaintiffs' claims.[1] But it didn't accrue then. Instead, each time Santos failed to make a contribution, it gave rise to a separate claim, and the statute of limitations began to accrue for that claim. Because Plaintiffs only seek contributions from January 1, 2017, forward, the three-year statute of limitations does not bar their claims. Because Santos cannot point to any evidence to create a material factual dispute about Plaintiffs' claims, the Court will grant Plaintiffs' summary judgment motion and deny Santos's motion.

---

[1] Plaintiffs are Carpenters Health and Welfare Fund of Philadelphia and Vicinity, Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, Carpenters Savings Fund of Philadelphia and Vicinity, Carpenters Joint Apprentice Committee, Carpenters International Training Fund, the Trustees Thereof, Carpenters Political Action Committee of Philadelphia and Vicinity, Keystone Mountain Lakes Regional Council of Carpenters, as successors to the Metropolitan Regional Council of Philadelphia and Vicinity, United Brotherhood of Carpenters and Joiners of America ("Union"), the General Building Contractor Association, Inc. ("GBCA"), and its Industry Advancement Program.

I. BACKGROUND

   A. The Agreements

In June 2005, Santos signed a Short Form Agreement (the "SFA") that bound it to a collective bargaining agreement between the GBCA and the Union (the "GBCA Agreement" and, together with the SFA, the "Agreements"). The agreement extended to any "additions, modifications, extensions and renewals" of the CBA. (ECF No. 21-2 at Ex. A, ¶ 1.) The SFA was "effective . . . until one party shall provide to the other written notice . . . of intent to terminate the then-current agreement at its stated expiration that shall actually be received by the other party not later than ninety (90) days prior to the stated expiration date of the then-current Agreement." (*Id.* at ¶ 2.) Santos has never terminated the SFA.

In May 2015, the GBCA Agreement was revised. The Agreement applied to "carpentry work, lay-out work, millwright work, wharf and dock building work, pile-driving work, hardwood floor laying work or lathing on any project on which an Employer holds a contract . . .." (*Id.* at Ex. D, Art. 2(a).) The GBCA Agreement permits the Council to determine that employers had to pay a certain portion of wages to various union funds, including the Funds. (*Id.* at Art. 4(g).) Article 19 of the GBCA Agreement spells out the collection procedures for payments due to the Funds and authorizes audits and legal action for missed payments. (*Id.* at Art. 19.)

   B. The Audits

The Funds audited Santos in 2011 and concluded that it had not made required contributions. They filed suit. In March 2013, they settled with Santos. As part of that settlement, Santos paid the funds $25,000. Santos also agreed to adhere to the GBCA Agreement for "any commercial or residential carpentry work or residential carpentry work" within the Council's jurisdiction. (*Id.* at Ex. E, ¶ 1.)

After the parties settled the 2011 lawsuit, Santos made additional contributions that the GBCA Agreement required. The Funds audited Santos in 2014. In June 2014, the Funds informed Santos that their audit revealed that Santos owed additional money for work done after the settlement agreement. Santos paid what the Funds asked.

Santos stopped making contributions to the Funds in 2014. In October 2016, the Funds asked Santos to cooperate with another payroll audit. In January 2017, Santos provided some of the information that the Funds requested, but not all of it. The Funds determined, based on the information that they had, that Santos owed them money. But it does not appear they took any action to collect. During conversations about Santos's cooperation with the audit, Santos asked the Funds' auditor for information about how to terminate the SFA.  In June 2018, the Funds asked Santos to schedule a payroll compliance audit. Santos did not comply.

### C.     Procedural History

On February 15, 2019, Plaintiffs filed this case against Santos asking the Court to order Santos to submit to a payroll audit.  Santos then agreed to the audit. Plaintiffs determined that Santos owed them $234,207.55 in unpaid contributions, liquidated damages, pre-judgment interest, and audit fees, for the period beginning January 1, 2017.  The parties have filed cross-motions for summary judgement.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotations omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

The filing of cross-motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (citation omitted). Rather, "[w]hen confronted with cross-motions for summary judgment 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir. 2006).

### III. DISCUSSION

#### A. Statute Of Limitations

Santos argues that the statute of limitations bars Plaintiffs' claims. ERISA does not specify a statute of limitations for claims for delinquent employer contributions, so courts look to the "most closely analogous state statute of limitations." *Connors v. Consolidation Coal Co.*, 866 F.2d 599, 603 (3d Cir. 1989); *see also Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992). In an

4

action like this one to recover unpaid employer contributions, courts import the three-year statute of limitations from Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.9a(g). *See Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 45 (3d Cir. 1990). When a court imports a state statute of limitations, state law is the "primary guide" as to tolling principles, unless the application of state law would conflict with the federal policy underlying the cause of action. *Id.* (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463-64 (1975)).

Plaintiffs filed this case on February 15, 2019. Thus, the statute of limitations only bars breaches that occurred before February 16, 2016. In their Complaint, Plaintiffs seek only contributions that were due after January 1, 2017. (ECF No. 1 at ¶ 13.) The claims are timely.

Santos argues that the statute of limitations began to run in 2015, after it stopped making contributions. The problem with that argument is that the Agreements obligated Santos to make periodic payments to the Funds. Under a contract "where installment or periodic payments are owed, a separate and distinct cause of action accrues for each payment as it becomes due." *Wartella v. Guardian Life Ins. Co. of Am.*, Case No. 3:15-cv-614, 2017 WL 4478007, at * 3 (E.D. Pa. Oct. 6, 2017); *Total Control, Inc. v. Danaher Corp.*, 359 F. Supp.2d 387, 391 (E.D. Pa. 2005); *Am. Motorists Ins. Co. v. Farmers Bank and Trust Co. of Hanover*, 644 A.2d 1232, 1235 (Pa. Super. 1994). Thus, each time Santos did not pay, it committed a new breach of the contract, and the statute of limitations began to accrue for that particular breach.

Santos argues that the Agreements terminated because the Funds did not seek to enforce their rights when Santos did not make contributions in 2014 and 2015. That is not how the statute of limitations works. The statute of limitations bars **claims,** it does not terminate contracts. Though it is not clear, Santos might be arguing that it repudiated the Agreements when it stopped making contributions. A repudiation creates an exception to the general rule that the statute of limitations

5

accrues separately for each breach of a contract. If there has been an "outright repudiation" of the contract, then the statute begins to run as to all claims about the contract. *Wartella*, 2017 WL 4478007, at * 5. However, to invoke this rule, there must have been an absolute and unequivocal refusal to perform or a distinct and positive statement of inability to do so. *See id.* A "party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform." *Id.*

The undisputed facts demonstrate that Santos did not repudiate the Agreements. First, in 2015 and 2016, it did not refuse to perform under the Agreements or make a statement about its inability to do so. To the contrary, in January 2017, Santos provided information to cooperate with the Funds' audit of it. It also asked the Funds' auditor how to terminate the Agreements. Santos would not have provided that information or needed to terminate the Agreements if it had already repudiated them.

### B. Santos's Liability

The Agreements have provisions governing their termination. Santos admits that it never sent a notice of termination. So the Agreements remain in force. They require Santos to make contributions to the Funds. Plaintiffs have offered evidence, in the form of their audit, that Santos has not done so. Santos attempts to rebut the audit, but it has not offered evidence to create a factual dispute.

Santos claims that three of the projects were residential and that, as of January 13, 2017, the GBCA Agreement no longer applied to residential projects. Santos offers no evidence to support that assertion. The GBCA Agreement does not draw that distinction, and Santos has not pointed the Court to any other document that supports that distinction. Santos also claims that two of the projects involved demolition work that the GBCA Agreement does not cover. Again, Santos

6

offers no evidence to support its position. The documents on which it bases that argument do not establish that Santos performed work outside the scope of the GBCA Agreement, even when the Court takes them in the light most favorable to Santos.

## IV. CONCLUSION

Santos did not terminate the Agreements, but it did not comply with them. Because the statute of limitations does not bar Plaintiffs' claims, the Court will grant Plaintiffs' summary judgment motion and deny Santos's motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge

October 8, 2020